IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FREDERICK WADE K. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-343-SLR |
| | ) | |
| WILLIAM TERRY, | ) | |
| | ) | |
| Defendant. | ) | |

Frederick Wade K. Brown, pro se Plaintiff.

Lisa Ann Barchi, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Officer William Terry.

**MEMORANDUM OPINION**

Dated: January 12, 2007
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Frederick Wade K. Brown, proceeding pro se, filed this action against a number of defendants on May 7, 2005, pursuant to 42 U.S.C. § 1983. All defendants save Officer William Terry ("Terry") were dismissed from the case. (D.I. 29) Plaintiff alleges that Terry violated his constitutional rights when he engaged in excessive force. Now before the court is defendant's motion to dismiss/summary judgment and plaintiff's motion for appointment of counsel. (D.I. 44, 46) On May 24, 2006, the court deemed to review the motion to dismiss as one for summary judgment pursuant to Fed. R. Civ. P. 12(b). (D.I. 50) The court stated it accepted as true averments in an affidavit submitted in support of the motion for summary judgment, unless plaintiff filed a counter-affidavit or statement under penalty of perjury refuting the averments. Id. The court entered a briefing schedule for plaintiff to file and serve his response on or before June 26, 2006. Id. Plaintiff did not file a response, nor has he filed any documents with the court since March 31, 2006. For the reasons set forth below, the court will grant the motion for summary judgment and will deny as moot the motion for appointment of counsel.

## II. BACKGROUND

### A. Plaintiff's Allegations

The allegations in the complaint surround an incident that

occurred on February 26, 2005. (D.I. 1) Plaintiff alleges that he asked to make a telephone call, that Terry became angry with him, they yelled at each other, and plaintiff used disparaging language. Terry ordered plaintiff to cuff up and plaintiff was cuffed behind his back. Plaintiff alleges that Terry yanked the cuffs "extreamily [sic] violently" hurting both wrists and arms. (D.I. 1 at 2) Plaintiff was removed from his cell and, he alleges, as he exited the first set of doors Terry grabbed him by the shirt and slammed him into the window so that his face hit the frame and he suffered a busted lip. Id. at 3. Plaintiff alleges that Terry grabbed his shirt at the neck, leaving fingernail scratches. Id.

Plaintiff alleges that later he stepped through his cuffs, hit the wall, and broke a piece off a plastic chair. While removing the chair from the room, plaintiff alleges that Terry grabbed him by the throat, slammed him against the wall and began to hit him with his fist. Id. at 4. Plaintiff told Terry he was going to press charges and asked to talk to a lieutenant. He further alleges that, subsequently, Terry again began punching him in the face and that Terry was "totaly [sic] out of control." Id. Photo-graphs were taken, and plaintiff was checked by a nurse to determine if stitches were necessary. Id. at 5.

B. **Facts Submitted by Defendant**

Records made contemporaneous with the events of February 26,

2005, indicate that on that day, plaintiff sought to use the telephone and when told he could not, he was disrespectful to the staff. (D.I. 45, Layton Incident Report ("IR"); Terry IR)  C/O Samantha Layton ("Layton") and Terry were on the tier at that time. (D.I. 45, Terry IR)  Plaintiff became disruptive and Layton called for backup. (D.I. 45, Terry IR)  Sgt. Terhune ("Terhune") and C/O Gonzalez ("Gonzalez") responded to the call. Id.  Terry ordered plaintiff to cuff up, plaintiff was cuffed from behind, and escorted off the tier to the observation room (i.e., barbershop) by the four officers. (D.I. 45, Layton IR, Terry IR, Terhune IR, Gonzalez IR)  Lt. Welcome was notified and, before he arrived, Layton, Terry, Terhune, and Gonzalez heard loud banging and crashing. Id.  Terry saw plaintiff kick a barber chair to pieces and Layton was told plaintiff had stepped through his cuffs. Id.  She and the other three officers went to the observation room and plaintiff was ordered to the back of the room. Id.  Plaintiff complied with the order. Layton and Terry saw that plaintiff's mouth was freshly bleeding, he was spitting blood on the windows, had some other scratches, and had sprayed blood all over the room along with parts of the broken chair. (D.I. 45, Layton IR, Terry IR).  Terhune saw that plaintiff had a small amount of blood on his lip and chin. (D.I. 45, Terhune IR)

Terry and Terhune entered the room and removed the broken chair and trash can. (D.I. 45, Layton IR, Terry IR, Terhune IR,

Gonzalez IR)  As Terry left the room, plaintiff pushed him from behind.  Id.  Terry turned around and plaintiff hit him again, this time on his chest, and pushed Terry out of the room.  (D.I. 45, Layton IR, Terry IR)  The room was secured and double locked by Terhune.  Id.

Lt. Welcome ("Welcome") arrived at the observation room and saw blood spatters on its walls.  (D.I. 45, Welcome IR)  He was told by plaintiff that blood was on the walls because he "spit it there."  Id.  Welcome saw what appeared to be a superficial cut on the inside area of plaintiff's lower right lip area, notified Nurse Bryant and asked that she examine plaintiff.  Id.

After examining plaintiff's lip, Nurse Bryant stated that, "it looks like he bit it.  They are just superficial scrapes and cuts.  He doesn't need any treatment for that.  There's nothing else I can do for him."  (D.I. 45, Welcome IR)  The progress notes prepared upon examination state that the examination revealed three "indentions" to the lower right lip, no edema, no active bleeding, red superficial scratches to the back of the neck, a jagged fingernail with blood on it, no acute distress, even and unlabored respirations, and skin that was warm and dry to the touch.  (D.I. 45)

Plaintiff spoke to Staff Lt. M. Rispoli  (Rispoli")  immediately after he was examined by Nurse Bryant.  (D.I. 45, Rispoli IR)  Rispoli saw that plaintiff had fresh scratch marks

-4-

on his upper back near the back of his neck and the scratches had a small amount of blood. Id. Rispoli also saw blood under plaintiff's fingernails and on the front of his shirt. Id. Plaintiff indicated that he did not know how he received the scratches on his back. Id. Plaintiff was cleared by Nurse Bryant and transferred to a cell in the Security Housing Unit ("SHU"). (D.I. 45, Phillips IR, Welcome IR)

Each of the incident reports prepared by Layton, Terry, Gonzalez and Terhune state that no type of force was used. (D.I. 45, Layton IR, Terry IR, Gonzalez IR, Terhune IR) Layton reported that plaintiff had small superficial cuts and that medical indicated no treatment was required. (D.I. 45, Layton IR) Terry reported that plaintiff had a self-inflicted cut to the lower lip. (D.I. 45, Terry IR) Gonzalez reported that plaintiff had minor skin abrasions. (D.I. 45, Gonzalez IR) Terhune reported that plaintiff had minor skin abrasions and that plaintiff was seen by Nurse Bryant. (D.I. 45, Terhune IR)

As a result of the occurrence, plaintiff was charged with assault, damage or destruction of property, disorderly or threatening behavior, creating a health, safety or fire hazard, and failing to obey an order. (D.I. 45, Disciplinary Report, Disciplinary Hearing Decision) Plaintiff made a statement during his hearing as follows: "He assaulted me first when I came off tier. He threw me against glass. I did throw chair. He grabbed

me by the neck and starting punching me in face." (D.I. 45, Disciplinary Hearing Decision) Plaintiff was found guilty of all charges and received fifteen days in isolation. Id.

### III. DISCUSSION

#### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the

light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B.  Excessive Force**

Summary judgment on an excessive force claim is appropriate where "the evidence, viewed in the light most favorable to the plaintiff, does not support a "reliable inference of wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986); Thomas v. Ferguson, 361 F. Supp. 2d 435, 438 (D.N.J. 2004). To be determined is whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Whitley, 475 U.S. at 320; see also Thomas, 361 F. Supp. 2d at 438 (indicating that the "central question" in an excessive force claim is whether

-7-

force was applied "maliciously and sadistically to cause harm"). Factors to consider are: (1) the need for application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat to the safety of staff and inmates reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. See Whitley, 475 U.S. at 321; Thomas, 361 F. Supp. 2d at 438.

Terry argues that he did not use excessive force. Rather, he contends that the force was necessary to maintain order, the force used to remove plaintiff from the tier was reasonable under the conditions, and plaintiff received only minor injuries.

As discussed above, plaintiff alleges in his complaint that Terry used excessive force during the events of February 26, 2005. However, he did not respond to the motion for summary judgment and presented no summary judgment evidence to support his assertions. A party opposing a summary judgment motion cannot rest upon the "mere allegations or denials of the adverse party's pleading" but must respond with affidavits or deposition setting forth "specific facts showing that there is a genuine issue for trial." Ray v. Cell Extraction Unit 7, No. 04-4651, 142 Fed.Appx. 650, 651 (3d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

The facts before the court indicate that the force applied

-8-

was not so excessive as to present a cognizable excessive force claim. The facts support a finding that plaintiff's actions created the confrontation. Moreover, based upon the facts, any force applied was reasonably necessary to gain control of plaintiff. Also, plaintiff's resulting injuries were minor and, based upon the incident reports, were not there until after plaintiff engaged in the chair destruction incident.

Plaintiff presented no evidence from which a reasonable trier of fact could conclude that Terry used force maliciously and sadistically for the very purpose of causing plaintiff harm and, therefore, summary judgment is appropriate. See Vile v. Klem, 131 Fed. Appx. 386 (3d Cir. 2005). Accordingly, the court will grant the motion for summary judgment.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff moves for appointed counsel on the basis that he is unable to handle certain aspects of his case. (D.I. 46) He also advises that he is currently housed in a tier for mentally ill inmates, a factor which necessitates appointment of counsel.

Plaintiff, a pro se litigant proceeding in forma pauperis, has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). The "decision to appoint counsel may be made at any point in the litigation, and may be made by a district court sua sponte."

Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). It is within the court's discretion to seek representation by counsel for plaintiff, but this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting. . .from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)(representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

Terry was the remaining defendant in this case and the court is granting his motion for summary judgment. Plaintiff cannot succeed on the merits, and this case will be closed. Therefore, the court will deny as moot plaintiff's motion for appointment of counsel.

## V. CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is granted. (D.I. 44) Plaintiff's motion for appointment of counsel is denied as moot. (D.I. 46) An order shall issue.